**Opinion issued August 10, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00081-CV**

———————————

## IN THE INTEREST OF T.L.B., A.J., AND L.J., children

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-02943J**

---

## MEMORANDUM OPINION

L.W. appeals the termination of her parental rights to three children: T.L.B., A.J., and L.J. She challenges (1) the sufficiency of the evidence to support termination under three separate predicates, (2) the constitutionality of termination under Subsection M, (3) the finding against her on whether her failure to comply with a court order was not her fault to avoid termination under Subsection O, (4) the

sufficiency of the evidence to support the court's best interest finding, and (5) the designation of the Department of Family and Protective Services as the children's post-termination conservator.

We affirm.

## Background

### *The mother, the children who are the subject of this suit, and the mother's two older children*

The mother appealing the termination of her parental rights is L.W. We will refer to her by the pseudonym, Lesia. Three of her children are the subjects of this termination suit. We list them below along with the pseudonym we will use when referring to them:

| Child | Date of Birth | Age at Termination | Pseudonym |
|-------|---------------|--------------------|-----------|
| A.J. | November 8, 2011 | 8 | Ameer |
| L.J. | December 11, 2012 | 7 | Lela |
| T.L.B. | March 26, 2014 | 6 | Tiana |

During the August 2020 termination trial, the Department entered into evidence a decree of termination dated December 8, 2010, through which Lesia's parental rights to two older children were terminated. Those two children are listed below:

| Child | Date of Birth | Age at Termination | Pseudonym |
|-------|---------------|--------------------|-----------|
| A.L.D. | August 22, 2007 | 3 | Aaliyah |
| I.L.W. | December 22, 2009 | 11 months | Irvin |

2

The 2010 termination of parental rights was under Subsections E (endangering conduct) and O (noncompliance with court order). In Lesia's words, the termination was for "neglectful supervision and marijuana use." Lesia's date of birth is listed on some documents in the record. She was born on April 2, 1992. Thus, on the date of the first termination—December 8, 2010—she was 18 years and 8 months old. The record does not reveal how old Lesia was when the endangering conduct occurred.

### *The circumstances that led the Department to begin termination proceedings as to Ameer, Lela, and Tiana*

The Department filed its original petition to seek termination of Lesia's parental rights to Ameer, Lela, and Tiana in July 2019. Attached to its petition was an 8-page affidavit by Department Master Investigator, T. Ray.[1] The affidavit discusses the Department's history with Ameer, Lela, and Tiana. The affidavit states that the Department became involved in 2013 on allegations of neglectful supervision and drug use by Lesia, which prompted transfer of the matter to the Department's Family Based Safety Services division and ongoing services for the family. The Department became involved again in November 2018 due to allegations of neglectful supervision and drug use as well as concerns that the children were not enrolled in school.

---

[1]   The Department later filed a proposed temporary order with an amended affidavit attached.

Ray's affidavit details the Department's pre-2019 contacts with Lesia and the children and discusses allegations of abuse and neglect as well as the Department's investigation of these allegations. But Ray did not testify at the August 2020 termination trial. And the Department caseworker who did testify, D. Johnson, provided no evidence about the Department's investigations into the allegations or general case-history and family information. So the details of the allegations and the truth of the assertions are not part of this record in conducting our sufficiency review. *See In re E.F.*, 591 S.W.3d 138, 142 n.4 (Tex. App.—San Antonio 2019, no pet.).

Lesia was asked at trial whether the children were removed from her in 2013 and 2014, even before the final removal in 2019. She disputed that the children were removed from her two times before 2019. She testified that they were removed only once, in 2013. Any contact with the Department in 2014, according to Lesia, was limited to allegations without a removal.

Johnson testified that the three children were removed again in 2014, meaning that Tiana was removed at birth or shortly after.

Johnson testified that Lesia was provided services when the children were removed in 2019 but had not shown that she had learned from the services she completed. Nor had she completed all the services required by court order. Lesia had not established stability in her housing or employment either. And she was not involved in the children's education.

4

Johnson acknowledged that, toward the end of the case, Lesia provided several paystubs to prove she had a job and a copy of an apartment lease to prove she had housing. According to Johnson, though, these recent improvements did not alleviate the Department's concerns about income and housing instability.

The Department sought termination of Lesia's parental rights because Lesia had not established, within the year that the termination case was pending, that she was able to parent her children or providing them stability. By comparison, the children's placement with a relative had been successful. The children were doing "extremely well" in that placement, they had stability, and the placement wanted to adopt all three children to provide them a permanent home.[2]

Lesia testified about her efforts. She testified that she had been employed for three months. At some point, though the record is not clear when, Lesia leased a one-bedroom apartment, and later, the month before trial, she upgraded to a two-bedroom to prepare for the return of her children.

Lesia testified that she began a parenting class eight weeks before trial. She had three weeks of classes left to complete. She failed to explain waiting more than nine months to begin the required classes, other than a positive COVID rapid test in June 2020 that was followed by a lab-confirmed negative test. She testified:

---

[2] The Department elected not to disclose the identity of the placement, informing the court only that it was a relative of Lesia's. Lesia stated that she did not believe that her children were with any of her relatives.

I have been doing the best that I can for my children. I take responsibility for me not completing my services, but I feel that I have come a long way, and I will stop at nothing to try to get my children. I have provided stability as long as I've been having this job. I have not been able to see my children in person to bring them anything lately [because of COVID restrictions]. But as soon [as] I was able to see them again, I have not missed a visit without bringing them anything.

Johnson agreed that Lesia's visits with the children had gone well, but she testified that it was more than just the parenting classes that Lesia had not completed. Lesia also had not completed her court-ordered individual counseling, substance-abuse individual counseling, and domestic-violence education by the trial deadline, even though she had a year to complete the services.

That court order incorporated a September 25, 2019 parenting plan, which required Lesia to perform various, enumerated services to help her establish a stable and appropriate home environment for her children. Under the court order, Lesia had to attend parenting classes, submit to a psychological evaluation and follow any recommendations that resulted from the evaluation, provide evidence of stable housing and income, maintain a drug-free environment, and engage in various other services.[3] The deadline to complete these services was August 31, 2020.

The Department's permanency plan for the children, as of October 2019, was family reunification. The plan changed to relative adoption in February 2020 "due

---

[3]  The copy of the parenting plan in the record does not have Lesia's signature on it. The signature line is blank.

to lack of progress on services in family plan of service." That was the same month that Lesia tested positive for cocaine on a hair-follicle drug test. Lesia later tested negative, in June 2020, on another hair-follicle drug test, but the permanency plan was not revised. That same month, the trial court issued a permanency-hearing order that included a finding that, as of that date, Lesia had shown "adequate and appropriate compliance with the service plan." The June 2020 order set the date for the termination trial on August 12, 2020, and kept relative adoption as the Department's permanency goal.

At the August trial, Lesia was asked about a positive drug test in July 2020. She denied having a positive result that month. The Department did not seek to admit a drug-test result from July 2020, and any discussion of that test result occurred outside the trial itself and is thus not trial evidence.

The Department sought termination under Subsection (D) (endangering conditions), (E) (endangering conduct), (N) (constructive abandonment), and (O) (failure to comply with court order). *See* TEX. FAM. CODE §§ 161.001(b)(1)(D), (E), (N), (O). The only witnesses were Lesia, Johnson, and the guardian ad litem, L. Richardson. Both Johnson and Richardson testified that it was in the children's best interest to terminate Lesia's parental rights, given her repeated drug use and instability.

Of the four predicate grounds offered by the Department, the trial court terminated under Subsection (O) only, rejecting termination under (D), (E), and (N). But the trial court, sua sponte, also terminated Lesia's parental rights under Subsection (M) (prior termination under (D) or (E)) and (J)(i) (not enrolled in school).

## Sufficiency of Evidence to Support the Predicate Findings

Lesia challenges the sufficiency of the evidence to support termination under any of the predicates listed in the termination decree. A single predicate finding under Section 161.001(b)(1) of the Family Code can support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Thus, if multiple predicate grounds are found by the trial court, we will affirm on any one ground because only one is necessary for termination of parental rights. *In re T.G.R.-M.*, 404 S.W.3d 7, 13 (Tex. App.—Houston [1st Dist.] 2013, no pet.).[4] We begin with Subsection (O), the only basis for termination in the decree of termination that the Department sought.

---

[4] When termination is based on Subsection (D) or (E), we also analyze the sufficiency of the evidence to support those grounds, if raised on appeal, because of the future implications for termination as to later children under Subsection (M). *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (holding that allowing (D) and (E) findings to go unreviewed on appeal when the parent has presented the issue to the appellate court violates the parent's due-process and due-course-of-law rights). Lesia's parental rights to Ameer, Lela, and Tiana were not terminated under (D) or (E); therefore, the holding in *In re N.G.* does not apply.

8

## A.  Standard of review

A parent's rights to the "companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). A termination decree is final, irrevocable, and permanently divests the parent of all legal rights, privileges, duties, and powers related to the parent-child relationship, except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Id.* But the "rights of natural parents are not absolute" and the "rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d at 361. Recognizing that parents may forfeit their parental rights by their acts or omissions, the primary focus of any termination suit is protection of the child's best interest. *See id.*

Because of the severity and permanency of the termination of parental rights, the evidence supporting termination must meet the threshold of clear and convincing evidence. TEX. FAM. CODE § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This is an

intermediate standard that falls between the preponderance standard used in ordinary civil proceedings and the reasonable doubt standard used in criminal proceedings. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

This heightened burden of proof results in a heightened standard of review. *In re J.G.S.*, 574 S.W.3d 101, 114 (Tex. App.—Houston [1st Dist.] 2019, pet. denied); *In re S.R.*, 452 S.W.3d 351, 358 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). When a parent challenges the legal sufficiency of the evidence supporting termination, the court reviews all evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d at 266. The court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. It should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. If, after conducting a legal sufficiency review of the record evidence, the court determines that no reasonable factfinder could have formed a firm belief or conviction that the matter to be proved was true, the court must conclude that the evidence on that matter is legally insufficient. *In re J.O.A.*, 283 S.W.3d at 344–45; *In re J.F.C.*, 96 S.W.3d at 266.

Only when the factual sufficiency of the evidence is challenged does the reviewing court review disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The factfinder is the sole arbiter of the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003). Our opinion should explain why we have concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding. *In re J.O.A.*, 283 S.W.3d at 345.

**B.     The evidence supports the trial court's finding under Subsection (O)**

Lesia's family-services plan was incorporated into the trial court's order in August 2019, meaning that failure to comply with the services plan would be grounds for termination under Subsection (O). Her services plan listed the Department's concerns over Lesia's parenting, including that she could not provide

11

her children with a safe environment or meet their educational needs. The Department also had concerns that Lesia "may be under the influences of mind altering drugs that may be the cause of the parent's decisions [and parental choices]."

The services plan listed tasks Lesia needed to complete, which included attending parenting classes and maintaining stable income, stable housing, and "a drug free living environment," among other things. The plan listed as its purpose to help Lesia provide her children with "a safe environment within the reasonable period specified in the plan," and it warned that failure to provide a safe environment could lead to termination of her parental rights. Lesia was given one year to complete the services.

By her own testimony, Lesia used cocaine three months after the family services plan was created. She then tested positive for cocaine on a hair-follicle drug test. Her testimony about her December 2019 drug use and February 2020 failed drug test was evidence of her failure to comply with the terms of the trial court's order.

Lesia testified that she tried to comply with the trial court's order. She completed most of the assessments, but she did not complete the counseling and classes. She did not complete the individual counseling or substance-abuse individual counseling. She began the parenting classes, but she did not start them until two months before trial and, as a result, had not completed them by the trial

12

date. She began a job and signed an apartment lease, but those developments came late in her case, just two-to-three months before the termination trial.

These court-ordered requirements were placed on Lesia because the Department and, in turn, the trial court determined that they were necessary for Lesia to establish that she is capable of providing a safe, stable, and secure environment for her children.

Just before the termination trial began, the trial court conducted a permanency hearing at which Johnson testified about Lesia's status in complying with the court-mandated services enumerated in the family services plan. Johnson did not repeat her testimony during the subsequent trial.

At trial, Lesia did not dispute that she had not completed the court-ordered requirements. In her brief, though, she argues there is insufficient evidence of a failure to complete her services because the caseworker's testimony about the uncompleted services occurred during the preliminary portion of the hearing that dealt with permanency, not after the hearing transitioned into the termination trial. She argues that, during the trial portion of the hearing, the caseworker never testified about which services were left incomplete. But Lesia, herself, testified that she did not complete the services.

Lesia admitted that she began the parenting classes just two months before the trial date and still had three classes left. She did not explain why she waited more

than nine months to begin this requirement. She also testified that she had not completed the required evaluations and had just scheduled one of them for the day after trial, asserting that there had been a misunderstanding whether an earlier phone conversation had counted as her evaluation. Thus, Lesia's own testimony established her failure to complete the family service plan requirements.

Lesia also argues that the trial court could not rule that she failed to comply with the plan because the plan was erroneously admitted into evidence. She bases this argument on the Department's failure to comply with a standing court order that required the parties to e-file their intended evidence at least 48 hours before trial. The Department filed the services plan after 6:00 pm, the night before trial. Lesia argues that the trial court abused its discretion in admitting this evidence over her objection.

But the plan did not have to be admitted for the trial court to determine that Lesia failed to comply with its provisions. A trial court may take judicial notice of its file in a parental-termination suit, including the pleadings, the existence of a family services plan, and orders adopting family services plans. *In re R.W.,* No. 01–11–00023–CV, 2011 WL 2436541, at *7 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.). And we may presume that a trial court presiding over a termination bench trial took judicial notice of the existence of a family services plan in its record without a request being made and without an announcement that it has

14

done so. *D.M. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-20-00557-CV, 2021 WL 1418986, at *10 (Tex. App.—Austin Apr. 14, 2021, no pet.) (mem. op.); *In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *In re S.J.S.*, No. 04-12-00067-CV, 2012 WL 2450817, at *6 (Tex. App.—San Antonio June 27, 2012, pet. denied) (mem. op.); *In re A.W.B.*, No. 14–11–00926–CV, 2012 WL 1048640, at *3 (Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem. op.) (presuming trial court took judicial notice of order adopting family service plan).

Lesia admitted she did not complete her services. And she admitted to using cocaine while under the family services plan, even though the plan required that she maintain a drug-free environment. Lesia is not relieved of the plan's requirements simply because the plan may not have been properly admitted into evidence. *In re A.X.A.*, No. 04-09-00519-CV, 2009 WL 5150068, at *5 & n.3 (Tex. App.—San Antonio Dec. 30, 2009, no pet.) (upholding termination of parental rights under Subsection (O) on evidence that parent failed to comply with court order, even without parenting plan in evidence because trial court could take judicial notice of its own files).

We will presume that this trial court took judicial notice of the family services plan in its record. And we conclude that there was legally and factually sufficient evidence that Lesia failed to adhere to the material requirements of the plan. The

evidence supports the trial court's determination that, by failing to complete her service plan, Lesia failed to finish the steps necessary to demonstrate her ability to provide a safe environment for her children. *See In re A.J.E.M.-B.*, No. 14-14-00424-CV, 2014 WL 5795484, at *12 (Tex. App.—Houston [14th Dist.] Nov. 6, 2014, no pet.) (analyzing termination under Subsection (O) for failure to comply with trial court's order).

Next, Lesia argues that, even if she did not complete her services, she has demonstrated recent efforts to engage in her services and a strong desire to have her children returned to her care. She argues that termination under Subsection (O) is not justified because she met her burden under Section 161.001(d) to establish by a preponderance of the evidence that, while she could not complete services, she made a "good faith effort to comply with the order" and her "failure to comply with the order is not attributable to any fault" of her own. TEX. FAM. CODE § 161.001(d). We cannot agree.

Lesia provided no explanation why she waited over nine months to begin parenting classes. Nor did she explain what prevented her from completing the required counseling. She testified that she thought a phone call to the counseling office counted as her court-ordered evaluation, but her plan required more than an evaluation. It required her to complete the related counseling, which she did not do.

16

Lesia admitted to using cocaine while under the family services plan, which violated material aspects of the plan directly related to the reasons the children came under the Department's care to begin with—a history of drug use and child neglect. Lesia testified that the cocaine use was an isolated, bad decision. Even if the trial court credited her testimony—which it did not have to do—voluntary drug use while one's children have been removed based on a history of drug use and child neglect goes against Lesia's argument that her failure to comply with the family services plan was due to no fault of her own. *See In re D.K.J.J.*, No. 01-18-01081-CV, 2019 WL 2455623, at *16 (Tex. App.—Houston [1st Dist.] June 13, 2019, pet. denied) (mem. op.) (rejecting mother's affirmative defense argument under Section 161.001(d)).

Reviewing the evidence under the applicable standards, we conclude the evidence is legally and factually sufficient to support the trial court's finding that Lesia failed to comply with court-ordered services to obtain the return of her children and that she failed to prove by a preponderance of evidence that she could not comply with specific provisions but that she made a good-faith effort to comply and any failure was not her fault. *See* TEX. FAM. CODE §§ 161.001(b)(1)(O); 161.001(d). Having concluded the evidence supports the trial court's finding under Subsection

(O), we need not review the sufficiency of the evidence to support termination under any other subsection or the constitutionality of termination under Subsection (M).[5]

## Best Interest

In her fifth issue, Lesia contends there is insufficient evidence to support a finding that termination is in the three children's best interest.

### A. Applicable law

Along with a predicate violation, the Department must establish by clear and convincing evidence that termination is in the children's best interest. TEX. FAM. CODE § 161.001(b)(2). There is a strong presumption that the child's best interest

---

[5] We recognize that the trial court and the parties in this proceeding had other hearings before the trial date, including a permanency hearing immediately before trial at which the caseworker provided factual information about the reasons for removal and Lesia's compliance and noncompliance with the family services plan. Those proceedings allowed the court a level of familiarity with the case and potentially caused the witnesses and attorneys to have facts in mind that were not actually introduced as evidence at the termination trial.

There is only one volume of the reporter's record for this termination trial that contains testimony. It is volume two, and it is only 69 pages long. Trial testimony does not begin until page 25. It ends on page 61. That is just 36 pages of testimony to establish, by clear and convincing evidence, not only the grounds for termination but also that it is in the best interests of these children to permanently sever their relationship with their mother.

We, of course, are mindful of the extraordinary burdens placed on all participants in this system. Yet, we must reiterate what our colleagues at the San Antonio Court of Appeals earlier urged: "Given the constitutional rights of the parents in these proceedings, the future placement of the children involved, and the effect such placement will have on their lives, . . . we urge the trial court and the parties to more completely develop the evidence at trial, so the appellate record is commensurate with the finality of parental termination." *Interest of E.F.*, 591 S.W.3d 138, 142 (Tex. App.—San Antonio 2019, no pet.).

18

will be served by preserving the parent-child relationship. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *see* TEX. FAM. CODE § 153.131(b). Because of the strong presumption that maintaining the parent-child relationship is in each child's best interest and the due process implications of terminating a parent's rights without clear and convincing evidence that termination is in the child's best interest, "the best interest standard does not permit termination merely because a child might be better off living elsewhere. Termination should not be used to merely reallocate children to better and more prosperous parents." *In re W.C.*, 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.) (internal citation omitted); *see In re E.N.C.*, 384 S.W.3d 796, 809 (Tex. 2012).

A factfinder may consider several factors to determine the child's best interest, including the child's desires, the child's present and future physical and emotional needs, the present and future emotional and physical danger to the child, the parental abilities of the people seeking custody, programs available to assist those people in promoting the child's best interest, plans for the child by those people or by the agency seeking custody, the acts or omissions of the parent that may suggest that the existing parent-child relationship is not appropriate, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The lack of evidence on some factors does not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's

best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). But the lack of evidence cannot be used as if it were clear and convincing evidence supporting a termination finding. *In re E.N.C.*, 384 S.W.3d at 808. In some cases, undisputed evidence of only one factor may be enough to support a finding that termination is in the child's best interest; in other cases, there could be "more complex facts in which paltry evidence relevant to each consideration mentioned in *Holley* would not suffice" to support termination. *Id.* Our "best interest" analysis is not limited to these *Holley* factors; other factors may be considered. *Holley*, 544 S.W.2d at 372.

"A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

**B.    The evidence supports a determination that termination is in the children's best interest**

We will review the evidence in the framework of the *Holley* factors.

**1.    The children's desires**

The Department presented no evidence of the children's desires. Lesia testified that Ameer asked her, at a visit the day before trial, how long it would take before they could go home. She assured him that she loves him but said that she did not know what would happen at trial.

20

This factor does not support termination.

## 2. The children's present and future physical and emotional needs and danger

Lesia testified that her two older children, Aaliyah and Irvin, were removed due to drug use and neglect. The caseworker testified that Ameer, Lela, and Tiana were removed twice before the 2019 removal that led to termination. Lesia admitted that she used drugs after the children's last removal and tested positive for cocaine in early 2020. Lesia did not complete drug treatment counseling. It was disputed whether she tested positive again just one month before trial, in July 2020.

Lesia's inability to comply with the requirement to maintain a drug-free environment as a prerequisite to regaining conservatorship of her children reasonably supports a determination that she cannot prioritize the children's needs. *Cf. In re N.J.H.*, 575 S.W.3d 822, 841 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (J. Brown, concurring) (stating that "family services plans approved and ordered by the trial courts frequently require a parent to abstain from drug use as a condition of visitation or reunification," and that factfinders could conclude that parental rights should be terminated where a parent does not abstain long enough to satisfy the plan, despite knowing that a failure to comply could support termination.) That evidence, coupled with the repeated Department involvement based on concerns of drug use and child neglect and Lesia's admitted history of drug use affecting her parental abilities, supports a conclusion that Lesia's home environment

21

may be a physical and emotional danger to the young children. *See In re M.M.M.*, No. 01-16-00998-CV, 2017 WL 2645435, at \*15 (Tex. App.—Houston [1st Dist.] June 16, 2017, no pet.) (mem. op.) (concluding that inability to stop drug use supported finding that termination was in child's best interest).

The Department argues that the past instability in the children's lives and Lesia's documented inability to care for her children indicate that returning them to Lesia would be inappropriate. While there is considerable documentation in the case file related to the children's residing outside Lesia's home in the past, as Lesia points out in her briefing, that evidence was not introduced at the termination trial.[6] Even without that evidence, though, there is adequate evidence of repeated drug use and instability to conclude that this factor supports termination.

### 3. The parenting abilities of people seeking custody

The Department's caseworker, D. Johnson, testified that the children are doing "extremely well" with the adoptive placement. The adoptive foster parents are giving the children the stability they needed and meeting all their emotional and educational needs.

The Child Advocates ad litem, L. Richardson, testified that the children are in a good placement where they "are doing very well" and being "well taken care of." They have structure and stability. They go to school. And they have a "very good

---

[6]    See note 5 above.

life." From these statements, the trial court reasonably could have concluded that the adoptive placement is providing appropriate and supportive parenting to the children.

Johnson testified about Lesia's parenting history, including the earlier termination of parental rights, in 2010, under Subsection (E) for endangering conduct involving the two older children. Richardson testified that placing Ameer, Lela, and Tiana with Lesia would be disruptive and destabilizing for the children, particularly given Lesia's lack of stable employment and housing as well as her positive drug tests.

While this Court would prefer to have a more detailed discussion of the parenting abilities of those being considered for conservatorship, we conclude that this record evidence relevant to this factor, though brief, weighs in favor of termination.

### 4. The available programs for conservators to promote the children's best interest

There was no testimony on the topic of available future services, but Lesia's history of services was discussed briefly. Lesia had services offered to her in the 2010 termination, again in 2013 after having Ameer and Lela, and possibly again in 2014 when Tiana was born. Only one of those times did she complete the services required. That was in 2013. Even after fully completing services, the circumstances

of the children's care led to subsequent Department involvement and another removal in 2019. Drug use remained an obstacle despite services being offered.

Even if future services are available to Lesia, the evidence does not support a conclusion that she would fully avail herself of those services or incorporate them into her parenting practices.

**5.     Lesia's and the Department's plans for the children**

Lesia's testimony was brief on this topic. She testified that she moved into a bigger, two-bedroom apartment so that her children would have their own room. And she testified that she loves her children and wants them with her. She did not discuss the assertion that the children had breaks in their schooling or any educational plans for the children. Nor did she address the history of the children living with other people and how she might be able to support and care for the kids in her own home in the future.

The other witnesses were nearly as brief on this topic. Johnson testified that the current placement wanted to adopt the children and would give the children the stability and permanency that they needed. Further, they would provide for their education needs moving forward. The placement would be permanent, and the children would remain together.

The evidence on this factor, though limited, weighs in favor of termination.

**6. Lesia's acts or omissions that may suggest that the existing parent-child relationship is not a proper one and any excuse for those acts or omissions**

Lesia admitted to a history of drug use and having her parental rights terminated in the past due to drug use and neglect. Even after the Department became involved in the care of these three children, Lesia used drugs, which led to a positive drug test and jeopardized her ability to have her children returned to her. Lesia did not complete the parenting classes or substance abuse classes to demonstrate a change of course or earnest effort to address the recurring drug use.

While her efforts to obtain stable income and housing during the last couple months of the case are to be commended, on balance, her acts and omissions, in the aggregate, suggest that the parent-child relationship is not one that would be stable and healthy for the children without significant community and government assistance. While there are some indications that Lesia's family and friends have been willing to help house and raise the children in the past, their substitute care is not the focus of this factor: it is Lesia's. *See In re C.G.*, No. 13-15-00360-CV, 2016 WL 8737455 (Tex. App.—Corpus Christi Jan. 7, 2016, no pet.) (mem. op.) (considering parent's reliance on others to provide care for children in evaluating whether termination of parental rights is in best interest of child; affirming termination). On balance, the evidence supports a determination that Lesia's acts or

omissions suggest that the parent-child relationship is not a proper one and that efforts to stabilize and support the relationship have been unavailing.

### 7. Best-interest conclusion

As stated, the trial evidence is not well-developed. There is much more material in the case file than in the record. Yet we must limit our review to the trial evidence. *See In re B.R.*, 456 S.W.3d 612, 617 n.4 (Tex. App.—San Antonio 2015, no pet.). Even limiting our review to the trial evidence, we conclude that the evidence favors the trial court's best-interest determination. *See In re G.M.*, 2019 WL 3432088, at *4–5 (J. Watkins, concurring) (stating that appellate court must be limited to trial record, expressing frustration at the "scant record" provided by the parties with general references to material not in the appellate record, but concurring that, even with such a limited record, there was legally and factually sufficient evidence to support the predicate finding, the best interest finding, and, ultimately, termination).

Stability is a paramount consideration in a termination suit. *In re J.S.B.*, No. 01-17-00480-CV, 2017 WL 6520437, at *21 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied) (mem. op.); *In re J.D.*, 436 S.W.3d 105, 119–20 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Stability and permanence are paramount in the upbringing of children."); *In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.) (child's need for stable, permanent home paramount

26

consideration in best interest determination). Lesia has a history of instability. There have been recurring issues that have led to the Department removing the children and offering services to Lesia. Even so, Lesia did not complete the services by the deadline to establish her ability to provide a safe and appropriate home environment for her children. Nor did she explain why she could not complete all her services. And Lesia admitted to using drugs while her termination suit was pending, in violation of her parent services plan and court order, even though her drug use was a material aspect of the Department's concerns over her ability to adequately care for her children.

In contrast, the evidence shows that the adoptive placement is providing stability and educational support. The children are doing "extremely well" and being "well taken care of" in what is expected to be a permanent home together.

The evidence is factually and legally sufficient to support the trial court's best-interest finding.

**Post-Termination Conservatorship Challenge**

In her final issue, Lesia argues that there was legally and factually insufficient evidence to support the trial court's order appointing the Department as managing conservator of the children.

When the parental rights of all living parents of a child are terminated, the trial court must appoint a "competent adult, the Department of Family and Protective

27

Services, or a licensed child-placing agency as managing conservator of the child."

TEX. FAM. CODE § 161.207(a); *see In re D.K.W., Jr.*, No. 01-17-00622-CV, 2017

WL 6520439, at *5 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied)

(mem. op.). Conservatorship determinations are reviewed for an abuse of discretion

and will be reversed only if the decision is arbitrary and unreasonable. *In re J.A.J.*,

243 S.W.3d 611, 616 (Tex. 2007); *In re A.C.*, 394 S.W.3d 633, 644 (Tex. App.—

Houston [1st Dist.] 2012, no pet.).

An order terminating the parent-child relationship divests a parent of legal

rights and duties to the child. *See* TEX. FAM. CODE § 161.206(b). Once we overrule

a parent's challenge to an order terminating her parental rights, the trial court's

appointment of the Department as sole managing conservator may be considered a

"consequence of the termination." *In re D.K.W., Jr.*, 2017 WL 6520439, at *5

(quoting *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet.

denied)).

Because we have overruled Lesia's challenge to the portion of the trial court's

order terminating her parental rights, the order has divested Lesia of her legal rights

and duties related to Ameer, Lela, and Tiana. *See* TEX. FAM. CODE § 161.206(b); *In

re D.K.W., Jr.*, 2017 WL 6520439, at *5. Lesia therefore does not have standing to

challenge the portion of the order appointing the Department as the children's

conservator. *In re D.K.W., Jr.*, 2017 WL 6520439, at \*5. We overrule Lesia's final issue.

## Conclusion

We affirm the termination of Lesia's parental rights as to Ameer, Lela, and Tiana under Subsection (O), having concluded that there is sufficient evidence from which the trial court could have formed a firm belief or conviction that Lesia failed to comply with the court-ordered service plan and that termination is in the children's best interest.


Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.